# 99 DTA 118

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I , SAN JUAN**

EMPRESAS INABON, INC., ET ALS
Apelantes

v.

BANSANDER LEASING CORPORATION, ET ALS
Apelados

Núm. KLAN-98-01268

San Juan, Puerto Rico, a 18 de marzo de 1999

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez González Román

Fiol Matta, Jueza Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

La apelante, Empresas Inabón, Inc. (Inabón), solicita la revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan, de 16 de octubre 1998 y notificada el 22 de octubre del mismo año. El

tribunal apelado resolvió que procedía la ejecución de una sentencia de 11 de mayo de 1995 la cual impartía aprobación a una estipulación entre Inabón y Bansander Leasing Corporation y Banco Santander Puerto Rico (ambos, Santander). En dicha estipulación Santander desistía sin perjuicio de su acción contra Inabón a cambio de varios compromisos de esta última.

# I

Inabón suscribió con Santander varios contratos de arrendamiento financiero, *"leasing"* para la adquisición de equipos de construcción. Dichos contratos disponían que de ser incumplidos, quedarían vencidos automáticamente.

El 22 de marzo de 1995, Santander presentó ante el Tribunal de Primera Instancia una demanda en cobro de dinero contra Inabón y sus garantizadores por alegado incumplimiento del pago de los cánones de arrendamiento bajo uno de los contratos vigentes entre las partes. Dichos cánones impagados, que ascendían a siete mil setecientos veinte dólares ($7,720.00), más la cantidad de mil trescientos doce dólares con cuarenta centavos ($1,312.40) de atrasos, sumaba un total de nueve mil treinta y dos dólares con cuarenta centavos ($9,032.40). Según Santander, la deuda aumentaría en mil novecientos treinta dólares ($1,930.00) por cada mes subsiguiente en que Inabón utilizara el equipo arrendado sin pagar los cánones retrasados, sin incluir los cargos por mora autorizados por ley.

En su demanda, Santander reclamó otra deuda atrasada de Inabón ascendente a sesenta y un mil seiscientos cuarenta y un dólares ($61,641.00) más once mil quinientos seis dólares con treinta y dos centavos ($11,506.32) en demoras, para un total de setenta y tres mil ciento cuarenta y siete dólares con treinta y dos centavos ($73,147.32). Según la demanda, la deuda aumentaría en veinte mil quinientos cuarenta y siete dólares ($20,547.00) por cada mes subsiguiente de retraso, además de los cargos legales por mora.

El 21 de abril de 1995, las partes suscribieron el documento titulado *"Estipulación y aviso de desistimiento sin perjuicio"* (la estipulación). Mediante dicho escrito Santander desistió sin perjuicio de su acción en cobro de dinero contra Inabón a cambio de los siguientes compromisos y acuerdos:

*"a) Se reconoció que Inabón le había pagado, mediante cheque certificado, la suma de cincuenta mil setecientos sesenta y seis dólares con cincuenta y seis centavos ($50,766.56) además de dos cheques, uno por la suma de cuarenta y dos mil setecientos treinta y siete dólares con setenta y seis centavos ($42,737.76) y otro de ocho mil veintiocho dólares con ochenta centavos ($8,028.80).*

*b) Inabón se comprometió a pagar dentro de veinte (20) días la suma de ochocientos setenta y un dólares ($871.00) correspondientes al costo de una fianza obtenida por Santander en el caso más los sellos de radicación.*

*c) Inabón se comprometió a pagar las sumas de novecientos veintiseis dólares con cuarenta centavos ($926.40) y de mil seiscientos cuarenta y tres dólares con setenta y seis centavos ($1,643.76) dentro de veinte (20) días. Estos pagos pondrían al día todos los bienes muebles arrendados.*

*d) Inabón reiteró que este acuerdo de la estipulación no constituyó una novación de los contratos existentes y que seguiría cumpliendo con aquellos.*

*e) Se acordó que en caso de que Inabón incumpliese los compromisos y pagos estipulados, los contratos vencerían automáticamente, quedando Inabón en la obligación de devolverle el equipo arrendado a Santander. Tras dicha entrega, los contratos se liquidarían según sus términos y condiciones e Inabón sería responsable de*

*satisfacer cualquier deficiencia que surgiera de la liquidación de los bienes arrendados."*

Mediante sentencia de 11 de mayo de 1995, el tribunal aprobó la mencionada estipulación impartiéndole así fuerza de ley.

Posteriormente, según alega Santander, Inabón incumplió con las disposiciones de varios de los contratos entre las partes, hasta quedar a deber una suma total de cuarenta y siete mil ochocientos dieciocho dólares con cincuenta y seis centavos ($47,818.56). Surge del expediente apelativo que el 21 de febrero de 1996, Santander solicitó que el tribunal ejecutara la sentencia que aprobó la estipulación entre las partes, alegando que Inabón había incumplido con el pago de dos mensualidades. En virtud de ello, Santander solicitó que se le devolvieran los equipos arrendados y se liquidaran los contratos según lo dispuesto en la estipulación. El 5 de marzo de 1996, ▪ el tribunal declaró con lugar la solicitud de Santander y emitió una orden de reposesión de los bienes muebles objeto de los contratos de arrendamiento financiero para que se vendieran y liquidaran. El alguacil diligenció la orden el 15 de marzo de 1996 y Santander procedió a vender el equipo en pública subasta. ▪

El 16 de abril de 1996, Inabón demandó a Santander alegando que la orden de ejecución fue dictada y diligenciada sin jurisdicción, causándole pérdidas de doce millones de dólares ($12,000,000.00) por interrupción del negocio, reemplazo del equipo, imposibilidad de adquirir nuevos contratos, incremento en costo de producción y *"otros daños"*.

Según Inabón, nunca se le notificó la solicitud de ejecución de sentencia presentada por Santander. Sin embargo, Santander alega que la notificó, pero que Inabón nunca se opuso a ella. Inabón también alega que no se le notificó de la orden de ejecución. Alegó, además, que había pagado todo el dinero estipulado en el litigio de 1995 y que fue a cambio de ello que Santander desistió sin perjuicio de aquella demanda.

Mediante moción de sentencia sumaria parcial, Inabón recalcó que la orden de ejecución fue dictada sin jurisdicción, ya que Santander había desistido sin perjuicio de su acción original en cobro de dinero. Por eso, no procedía la ejecución de aquella sentencia sino la presentación de un nuevo pleito para conseguir un remedio para el alegado incumplimiento.

Tras varios incidentes procesales, incluyendo la oposición de Santander a la moción de sentencia sumaria y la réplica de Inabón a dicha moción, el tribunal apelado concluyó, como cuestión de derecho, que Inabón había incumplido lo acordado en la estipulación y que, por ende, procedía la ejecución de la sentencia que fue dictada en virtud de esa estipulación. Así, declaró sin lugar la solicitud de sentencia sumaria y desestimó la demanda de Inabón con perjuicio. Es de esa sentencia que se recurre ante nosotros.

## II

Una estipulación dentro de un procedimiento judicial que pone fin a un pleito entre las partes es, en esencia, un contrato de transacción judicial. Artículo 1709 del Código Civil, 31 L.P.R.A. sec. 4821; *Sucn. Román v. Shelga Corp.*, 111 D.P.R. 782 (1981).

El contrato de transacción judicial ocurre en el contexto de una controversia que degenera en pleito, luego de lo cual las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso judicial en curso. *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 D.P.R. ___ (1995), **95 J.T.S. 10,** a la pág. 603.

La Regla 39.1(a)(2) de las de Procedimiento Civil establece el mecanismo procesal para lograr el desistimiento de un caso mediante estipulación o transacción. *Citibank v. Dependable Insurance Co.,* 121 D.P.R. 503 (1988). Dicha regla dispone, en lo pertinente:

*"Un demandante podrá desistir de un pleito sin orden del tribunal [... ]mediante la presentación de una estipulación de desistimiento firmada por todas las partes que hayan comparecido en el pleito. A menos que el aviso de desistimiento o la estipulación expusiere lo contrario, el desistimiento será sin perjuicio, excepto que el aviso de desistimiento tendrá el efecto de una adjudicación sobre los méritos cuando lo presentare un demandante que haya desistido anteriormente en el Tribunal General de Justicia, o en algún Tribunal Federal o de cualquier estado de los Estados Unidos, de otro pleito basado en o que incluya la misma reclamación."* 32 L. P.R.A. Ap. III, R. 39.1

Visto el derecho, es forzoso concluir que el tribunal de primera instancia erró al ordenar la ejecución de la sentencia de 11 de mayo de 1995. Lo que procedía para dilucidar los hechos alegados en la petición de ejecución de sentencia era la iniciación de un nuevo pleito por parte de Santander.

Por virtud del Artículo 1709 del Código Civil, *supra*, cuando Inabón y Santander suscribieron la estipulación efectivamente pusieron fin a la controversia entre ellos. Esa controversia se había convertido en un pleito judicial en el cual Santander reclamaba que Inabón le adeudaba un total de $82,179.72, además de unas partidas por concepto de mora. En ánimo de pago y cumpliendo con la estipulación cuyo propósito era dar fin a la controversia, Inabón traspasó tres cheques a Santander, uno de $50,766.66, uno de $42,737.76 y uno de $8,028.80 para un total de $101,533.22. Además se comprometió a pagar $926.40 y $1,643.76, los cuales pondrían al día todos los arrendamientos financieros. La estipulación también dispuso claramente que los contratos de arrendamientos financieros quedarían vencidos y los equipos liquidados sólo en el caso de que Inabón incumpliese los compromisos y pagos acordados en la estipulación. Ese fue el acuerdo entre las partes.

No hay duda de que si se hubiesen incumplido los términos de la estipulación se podría haber solicitado la ejecución de la sentencia. Véase, *Igaravidez v. Ricci Asencio,* 146 D.P.R. ___ (1998), **98 J.T.S. 146**. Sin embargo, del expediente no surge que Inabón incumpliera lo acordado en la estipulación. La reclamación de Santander que dio lugar a la ejecución de la sentencia de 11 de mayo de 1995, no se basa en una violación de la estipulación, sino en una nueva alegación de incumplimiento de contrato, ésta vez de ciertos cánones impagados ascendentes a $47,818.56. La obligación de pagar esos cánones no surge de la estipulación, sino de los contratos de arrendamientos financieros vígentes entre las partes.

Santander no puede utilizar la estipulación de 1995 como un medio para hacer valer las disposiciones de contratos independientes. El mero reconocimiento en la octava cláusula de la estipulación de que ésta no tiene efecto novatorio y que Inabón venía obligado a continuar cumpliendo con los contratos de arrendamiento financiero no constituye una incorporación de dichos contratos a la estipulación. Debemos recordar que por su naturaleza final y obligatoria, un contrato de transacción debe interpretarse restrictivamente. Así, el Artículo 1714 del Código Civil, 31 L.P.R.A. sec. 4826, limita el contrato de transacción *"rigurosamente a los objetos expresamente determinados, o que por inducción necesaria de sus palabras deben reputarse incluidos"*. Véanse, *Crespo Cardona, et.al. v. Autoridad de Carreteras, et.al.,* 136 D.P.R. ___ (1994), **94 J.T.S. 120**; *Negrón Rivera y Bonilla, Ex Parte,* 120 D.P.R. 61, 74 (1987).

Además, aunque de los hechos surge que en caso de incumplimiento de los contratos de arrendamiento financiero éstos podrían vencer automáticamente, sería necesario probar el hecho del incumplimiento ante un tribunal. La mera alegación de incumplimiento por parte de Santander no puede ser equivalente a una adjudicación. ■

En vista de lo anterior es innecesario discutir los demás errores planteados pues podemos *"dispone[r] del caso adecuadamente por los fundamentos previamente expuestos"*. Véase, *Luce & Co. v. JRT,* 86 D.P.R. 425 (1962).

Por los fundamentos que hemos expuesto, se revoca la sentencia apelada y se devuelve el caso para la continuación de los procedimientos.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 118

**1.** El escrito de apelación de Inabón expresa incorrectamente que la orden se emitió el 4 de mayo de 1996, en vez del 5 de marzo de 1996, la fecha correcta según la prueba.

**2.** En su escrito, Inabón expresa que los alguaciles diligenciaron la orden el 15 de mayo de 1996, en vez del 15 de marzo de 1996, la fecha indicada por Santander.

**3.** El Artículo 1168 del código Civil, 31 L.P.R.A. 3261, dispone que *"[i]ncumbe la prueba de las obligaciones al que reclama su cumplimiento, y la de su extinción al que la opone".*